# Exhibit "A"

Michael A. Ferrara, Jr., Esquire
THE FERRARA LAW FIRM, L.L.C.
601 Longwood Avenue
Cherry Hill, NJ 08002-2864

Robert T. Dassow, Esquire
HOVDE DASSOW & DEETS, LLC
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290

C. David Ewing, Esquire
EWING, MCMILLIN & WILLIS, PLLC
1100 Republic Building
429 West Muhammad Ali Boulevard
Louisville, KY 40202

Gary F. Franke, Esquire
GARY F. FRANKE CO., PA
120 East Fourth Street, Suite 1040
Cincinnati, OH 45202

*DAILY INTAKE*
*Pfizer Litigation Group*

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST and, SOUTHWEST AREAS HEALTH and WELFARE FUND, Individually and on behalf of all others similarly situated | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: ATLANTIC COUNTY Docket No. ATL-L-1120-07 MT CIVIL ACTION |
| Plaintiffs, | Case Code Number: 272 |
| v. | BEXTRA/CELEBREX LITIGATION |
| PFIZER, INC. and PHARMACIA CORP., | **SUMMONS** |
| Defendant. | |

TO:    Pfizer, Inc.
       235 East 42nd Street
       New York, New York  10017

**FROM THE STATE OF NEW JERSEY TO THE DEFENDANT NAMED ABOVE**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to the summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the County listed above within thirty five (35) days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, PO Box 971 (CN-971), Trenton, NJ 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from your deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 [$135.00 for Law Division and $135.00 for Chancery Division] and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief that plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer's Referral Services. A list of these numbers is also provided.

DATE: April 10, 2007

*Theodore Fetter*

Theodore Fetter
Clerk of the Superior Court

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharch Blvd., First Fl.
Atlantic City, NJ 08101
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201)488-0044
LEGAL SERVICES
(201)487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn.: Judicial Intake
First Floor, Courts Facility
49 Rancocas Road
Mount Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Floor, Hall of Records
101 S. Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil case Management Office
Broad & Fayette Streets, PO Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn.: Intake
First Fl., Court House
1 North Broad Street, PO Box 129
Woodbury, New Jersey 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House-1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Court House
175 South Broad Street, PO Box 8068
Trenton, New Jersey 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Square, PO Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., PO Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 07960-0910
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
91 Market Street, PO Box 18
Salem, New Jersey 08079
LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Floor
PO Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07960
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 231-0840

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

ATLANTIC COUNTY COURT HOUSE
SUPERIOR COURT LAW DIV
1201 BACHARACH BLVD
ATLANTIC CITY    NJ 08401

COURT TELEPHONE NO. (609) 345-6700
COURT HOUSE

TRACK ASSIGNMENT NOTICE

DATE:      APRIL 05, 2007
RE:        CENTRAL STATES ET ALS VS PFIZER INC ET AL
DOCKET: ATL L -001120 07

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON CAROL E. HIGBEE

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      004
AT:
    (609) 345-6700.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

ATTENTION:

                    ATT: MICHAEL A. FERRARA,   JR
                    FERRARA LAW FIRM
                    MICHAEL A FERRARA
                    601 LONGWOOD AVE STATE HWY 38
                    CHERRY HILL       NJ 08002-2864

JDMEIS

APR 1 0 2007

# STATEWIDE ADJOURNMENT PROCEDURE FOR CIVIL TRIALS AND ARBITRATIONS

[AS APPROVED BY THE SUPREME COURT AND PROMULGATED BY DIRECTIVE #6-04]

1. All requests to adjourn a civil trial or an arbitration are governed by *Rule* 4:36-3(b).

2. A good faith effort shall be made to discuss any request for an adjournment with all other parties before the request is presented to the court.

3. All adjournment requests must be made in writing, submitted to the Civil Division Manager. Faxed submissions are acceptable. Telephone requests will not be accepted absent exceptional circumstances. Requests must be copied to all other parties.

4. Any request for an adjournment must be presented as soon as the need for an adjournment is known. Absent exceptional circumstances, the request must be presented no later than the close of business on the Wednesday preceding the Monday of the week the matter is scheduled for trial or arbitration.

5. The written request must indicate the reason or reasons the adjournment has been requested, and whether the other parties have consented to the proposed adjournment. The written request should also include a new proposed date for trial or arbitration, consented to by all parties. If consent cannot be obtained, the court will determine the matter by conference call with all parties.

6. If the adjournment request is based upon a conflict with another court proceeding, the party requesting the adjournment must indicate whether he or she is designated trial counsel and supply the name of the other matter, the court and county in which it is pending, and the docket number assigned to the matter.

7. No adjournments will be granted to accommodate dispositive motions returnable on or after the scheduled trial date.

8. A matter should not be considered adjourned until court staff has confirmed that the request for an adjournment has been granted. Timely response will be given to the party requesting the adjournment, who will then be responsible for communicating the decision to all other parties.

9. To the extent any party is dissatisfied with the decision made by the Civil Case Management Office, the following procedure should be followed:

In master calendar counties, the aggrieved party should present the matter to the Civil Division Manager directly; to the extent that any party is dissatisfied with the decision made by the Civil Division Manager, that party may ask that the matter be presented to the Civil Presiding Judge;

In individual/team calendar counties, the aggrieved party should present the matter to the Civil Division Manager directly; to the extent that any party is dissatisfied with the decision made by the Civil Division Manager, that party

10. Requests for adjournment of a civil trial based on expert unavailability are governed by *R.* 4:36-3(c).

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE:  CK   CG   CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| Michael A. Ferrara, Jr. | ( 856 ) 779-9500 | Atlantic County |

**FIRM NAME (If applicable)**
The Ferrara Law Firm

**DOCKET NUMBER (When available)**
ATL-L-1120-07MT

**OFFICE ADDRESS**
601 Longwood Avenue
Cherry Hill, NJ 08002

**DOCUMENT TYPE**
Complaint

**JURY DEMAND**
✓ YES  ☐ NO

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
| --- | --- |
| Central States, Southeast and Southwest Areas Health and Welfare Fund, Individually and on behalf of all others similarly situated, Plaintiffs | Central States, Southeast and Southwest Areas Health and Welfare Fund, Individually and on behalf of all others similarly situated, Plaintiff  vs. Pfizer, Inc., and Pharmacia Corp., Defendants |

**CASE TYPE NUMBER**
(See reverse side for listing)    272

IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES  ✓ NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?**  ✓ YES ☐ NO

**IF YES, LIST DOCKET NUMBERS**   All Bextra/Celebrex cases pending before Judge Higbee.

**DO YOU ANTICIPATE ADDING ANY PARTIES** (arising out of same transaction or occurrence)?   ☐ YES ✓ NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN**
☐ NONE  ✓ UNKNOWN

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?**  ☐ YES ✓ NO

**IF YES, IS THAT RELATIONSHIP**  ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain) _____
☐ FAMILIAL  ☐ BUSINESS

**B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?**  ✓ YES ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

This is a third party payor class action complaint.

**RECEIVED and FILED**

**APR 05 2007**

**ATLANTIC COUNTY LAW DIVISION**

**DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?**  ☐ YES ✓ NO
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____

**WILL AN INTERPRETER BE NEEDED?**  ☐ YES ✓ NO
IF YES, FOR WHAT LANGUAGE: _____

**ATTORNEY SIGNATURE**

Revised effective 3/1/04

| SIDE 2 |  | **CIVIL CASE INFORMATION STATEMENT**<br>(CIS)<br>Use for initial pleadings (not motions) under *Rule* 4:5-1 |

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY |
| 502 | BOOK ACCOUNT |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |

**Track II — 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT – OTHER |

**Track III — 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 613 | REPETITIVE STRESS SYNDROME |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRIT |

**Mass Tort (Track IV)**
| | | | | |
|---|---|---|---|---|
| 240 | DIET DRUG | | 264 | PPA |
| 246 | REZULIN | | 601 | ASBESTOS |
| 247 | PROPULSID | | 619 | VIOXX |
| 248 | CIBA GEIGY | | | |

999 OTHER (Briefly describe nature of action) _272- Bextra/Celebrex Third Party Payor Class Action_

_____

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

Please check off each applicable category:

☐ Verbal Threshold      ☐ Putative Class Action      ☐ Title 59

Revised Effective 3/1/04

RECEIVED and
FILED

APR 05 2007

ATLANTIC COUNTY
LAW DIVISION

Michael A. Ferrara, Jr., Esq.
THE FERRARA LAW FIRM, LLC
601 Longwood Avenue
Cherry Hill, NJ 08001
Telephone: 856.779.9500
Facsimile: 856.661.0369

Robert T. Dassow, Esq.
HOVDE DASSOW & DEETS, LLC
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: 317.818.3100
Facsimile: 317.818.3111

C. David Ewing, Esq.
EWING, McMILLIN & WILLIS, PLLC
1100 Republic Building
429 West Muhammad Ali Boulevard
Louisville, Kentucky 40202
Telephone:502.585.5800
Facsimile: 502.585.5858

Gary F. Franke, Esq.
GARY F. FRANKE CO., LPA
120 East Fourth Street, Suite 1040
Cincinnati, OH 45202
Telephone: 513.564.9222
Facsimile: 513.564.9990

*Attorneys for Plaintiff*

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST and SOUTHWEST AREAS HEALTH AND WELFARE FUND, Individually and on behalf of all others similarly situated | ) ) ) ) SUPERIOR COURT OF NEW JERSEY ) LAW DIVISION- ATLANTIC COUNTY ) ) |
| Plaintiff | ) MT:  ATL-L-1120-07MT ) Case Code Number: 272 ) |
| V. | ) BEXTRA/CELEBREX LITIGATION ) |
| PFIZER, INC. and PHARMACIA CORP., | ) ) **CLASS ACTION** ) **COMPLAINT AND JURY DEMAND** |
| Defendants | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Central States, Southeast and Southwest Areas Health and Welfare Fund, individually and on behalf of all others similarly situated, by its attorneys, for its causes of action against Defendants, referenced herein, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Plaintiff" or "the Fund") is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5), and is an employee benefit plan established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq.*, for the purpose of providing health benefits, including prescription drug coverage, to eligible participants and beneficiaries. The Fund maintains its principal place of business at 9377 W. Higgins Road, Rosemont, Illinois 60018 and provides comprehensive health coverage for approximately 360,000 participants and beneficiaries in all or nearly all fifty (50) states.

2.      Defendant Pfizer, Inc. is a Delaware corporation with its address and principal place of business at 235 East 42nd Street, New York, New York 10017, and is authorized to do business and does do business in the State of New Jersey. At all times relevant hereto, Pfizer, Inc. was in the business of developing, manufacturing, promoting, marketing and distributing pharmaceuticals and other products, including the products known as Bextra and Celebrex.

3.      Defendant Pharmacia Corporation is a Delaware corporation with its address and principal place of business at 100 Route 206 North, Peapack, New Jersey, 07977, and is authorized to do business and does do business in the State of New Jersey. At all times relevant

hereto, Pharmacia Corporation was in the business of promoting, manufacturing, marketing, and distributing Bextra and Celebrex.

## SUBSTANTIVE ALLEGATIONS

4.    This Complaint arises from Defendants' marketing, advertising, promotion, and sale of the prescription drugs Bextra and Celebrex, anti-inflammatory drugs and pain relievers. Plaintiff alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("New Jersey CFA"), and fraudulent misrepresentation and suppression of material information in connection with the marketing and sale of Bextra and Celebrex.

5.    Defendants misrepresented and concealed material safety information from end-users, physicians, and Third-Party Payors concerning the cardiovascular and gastrointestinal risks associated with Bextra and Celebrex.   Additionally, Defendants made false and intentionally misleading representations, and omitted material facts, regarding the comparative safety and efficacy of Bextra and Celebrex as compared to traditional non-steroidal anti-inflammatory drugs (NSAIDS).

6.    The purpose of Defendants' misrepresentations and omissions, in combination with Defendants' aggressive marketing and promotion schemes, was to (i) create, and thereafter increase, end-user and physician demand for Bextra and Celebrex in an already crowded NSAID market, (ii) induce the Fund and the putative class to authorize the purchase of Bextra and Celebrex by their plan participants and beneficiaries, and (iii) justify the enormous price disparity between Bextra and Celebrex and traditional NSAIDs.

7.    As a result of Defendants' fraudulent and unconscionable commercial practices in connection with the marketing and sale of Bextra and Celebrex, Defendants induced the Fund and the putative class to authorize the purchase of Bextra and Celebrex.  Defendants intended

3

that the Fund and the class would rely on their marketing, advertisements, promotional efforts, and misrepresentations to their detriment. They did.

8.     As a consequence, Plaintiff and the class paid vastly more than they should and otherwise would have for Bextra and Celebrex.

9.     Plaintiff and the class seek actual damages, treble damages, punitive damages, attorneys' fees, and costs for full or practical purchase costs for Bextra and Celebrex prescriptions dispensed to natural persons covered by the Fund and the putative class members.

10.    NSAIDs have been widely used to treat arthritis, acute and chronic pain for nearly 40 years. Although they relieve symptoms in certain patients, such relief comes at the expense of important adverse effects, most notably upper gastrointestinal toxicity. Use of NSAIDs lead to hospital admissions for ulcer complications (bleeding and perforation) in around 1% of users annually and results in thousands of deaths every year.

11.    The emergence of NSAIDs that selectively inhibit the cyclo-oxygenase 2 ("COX-2") isoform, which is inducible and expressed at sites of inflammation, while sparing COX-1, associated with gastroprotection, was an apparent pharmacological breakthrough promising real hope of a better future for NSAIDs.

12.    Bextra and Celebrex, both manufactured by Defendants, were two of the new COX-2 inhibitors. Defendants believed that Bextra and Celebrex had the potential to be a new blockbuster drug with yearly sales in the billions of dollars.

13.    Defendants represented that Bextra and Celebrex provided symptomatic relief similar to ibuprofen and naproxen but that they were clinically superior because they were significantly less likely to cause the gastrointestinal adverse side effects associated with these and other NSAIDs.  For instance, NSAIDs can, in certain patients, cause gastrointestinal

4

perforations, ulcers and bleeding with long-term use. Defendants promoted Bextra and Celebrex as a safe and effective alternative that would have less deleterious and painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

### Celebrex

14.     Celebrex is the brand name of celecoxib and is among the class of NSAIDs that allegedly produce anti-inflammatory and analgesic effects to the benefit of people with rheumatoid arthritis or osteoarthritis.

15.     The federal Food and Drug Administration (hereinafter "FDA") approved Celebrex for use in the United States on December 31, 1998 for the treatment of arthritis and pain at recommended doses of 100 mg to 200 mg a day for osteoarthritis and 200 mg to 400 mg a day for rheumatoid arthritis.

16.     Once Defendants received approval of the drug for the treatment of arthritis and until approximately December 17, 2004, they aggressively promoted the drug to millions of physicians, healthcare providers and to the general public as an NSAID that had minimal risks.

17.     Not only did Defendants aggressively promote Celebrex, but in October 2004, Defendants restated their representations that no completed study had ever shown any increased heart risks related to Celebrex; however, there were at least three studies by that time that had linked Celebrex to serious and debilitating side effects, including cardiovascular and gastrointestinal risks.

18.     In a study done in 1999 to determine whether Celebrex was effective in treating Alzheimer's disease, patients took 400 milligrams of Celebrex daily. Defendants knew this study revealed that 22 out of 285 patients taking Celebrex suffered heart attacks, strokes and other cardiovascular events, while only 3 of 140 patients taking a placebo had similar problems.

5

19.     Notwithstanding its significant cardiovascular findings, Defendants did not publish the 1999 Alzheimer's study or submit this study to the FDA until after the FDA conducted a review of Celebrex.

20.     Defendants were also aware of the Celecoxib Long-term Arthritis Safety Study (hereinafter "CLASS") which was a double-blind, randomized safety trial that evaluated approximately 4,000 patients with osteoarthritis and rheumatoid arthritis treated with 400 milligrams of Celebrex twice a day, compared to approximately 4,000 patients treated with standard doses of ibuprofen or other NSAIDs.

21.     CLASS established that people who took Celebrex did not have significantly lower gastrointestinal complications than patients who took ibuprofen or other NSAIDs.

22.     Despite their knowledge of these results, Defendants nevertheless marketed Celebrex as not causing gastrointestinal problems.

23.     Despite Defendants marketing Celebrex as an NSAID that did not cause gastrointestinal problems, the FDA and its Advisory Committee concluded that the drug labeling for Celebrex should include the standard warning for doctors and their patients about risks associated with all NSAIDs, including risks of gastrointestinal ulceration, bleeding, and perforation.

24.     Defendants further knew that the National Institutes of Health had halted the "Adenoma Prevention with Celebrex" (hereinafter "APC") trial when it was found that Celebrex patients were up to four times more likely to suffer key cardiovascular events compared to patients who received a placebo.

25.     The APC trial was intended to determine if Celebrex could assist in the prevention of colon cancer. The trial included more than 2,000 people who had a precancerous

6

growth removed. Participants were selected at random to take either 200 mg of Celebrex twice a day, 400 mg of Celebrex twice a day, or a placebo three times a day.

26. The APC trial was halted because analysis by an independent Data Safety and Monitoring Board showed a 2.5-fold increased risk of major fatal and non-fatal cardiovascular events for participants taking the drug compared to those taking a placebo.

27. Upon learning of the results of these studies, the FDA asked Defendants to voluntarily suspend direct-to-consumer advertising for Celebrex during the time it was obtaining and evaluating scientific data on the adverse effects of the drug.

**Bextra**

28. Like Celebrex, Bextra was manufactured by Defendants.

29. Defendants failed to perform adequate testing that would have shown Bextra caused serious side effects. Defendants also failed to provide warnings that would accurately reflect the serious side effects caused by Bextra.

30. Prior to the manufacturing, sale and distribution of Bextra, Defendants had notice and knowledge from several sources that Bextra presented substantial and unreasonable risks of harm to consumers.

31. Despite knowledge of the serious risks Bextra posed to consumers, Defendants intentionally proceeded with the manufacturing, sale and marketing of Bextra. Defendants' conduct was therefore wanton and willful, and displayed a conscious disregard for the safety of consumers.

**Defendants' Mis-Marketing Scheme
And Activities Directed To Third-Party Payors**

32. As part of the unlawful scheme set forth below, Defendants promoted the use of

7

Bextra and Celebrex to Third-Party Payors as a "breakthrough" drug providing important clinical advantages over older and far less expensive NSAIDs.

33.     The extent to which a drug is paid for by Third-Party Payors is determined by that drugs' status on the Third-Party Payor's "formulary," which is a list of drugs that plan participants are authorized to purchase for payment under the benefit plan.

34.     Placement of a prescription drug on the formularies of Third-Party Payors is critical to the success of the drug. Defendants knew that preferred placement on these formularies would guarantee commercial success for Bextra and Celebrex.

35.     In an elaborate and sophisticated manner, Defendants aggressively marketed Bextra and Celebrex directly to medical professionals (including physicians, dentists, and leading medical scholars) in order to leverage pressure on Third-Party Payors, medical care organizations, and large institutional buyers *(e.g.,* hospitals) to include Bextra and Celebrex on their formularies. Bextra and Celebrex's marketing campaign specifically targeted Third-Party Payors, physicians and dentists, and was designed to convince them of both the therapeutic and economic value of Bextra and Celebrex. Faced with the increased demand for the drug by health care professionals that resulted from Bextra and Celebrex's successful advertising and marketing blitz, Third-Party Payors were compelled to add Bextra and Celebrex to their formularies.

36.     Defendants' marketing and promotion of Bextra and Celebrex was part of a scheme to create the impression of, and demand for, Bextra and Celebrex as a wide-ranging pain reliever, particularly for the  treatment of arthritis pain and/or pain in general (a use for which it was not FDA approved). The  scheme was accomplished by unlawful means including, but not limited to, (i) suppression of data showing cardiovascular risks associated with the use of Bextra and Celebrex, (ii) suppression of data showing risks of serious and potentially life-threatening

8

skin reactions, (iii) manipulation of data to give the appearance of superiority over other NSAIDs in pain relief, efficacy, and GI safety when such superiority did not exist, (iv) false promotional materials directed to doctors and consumers, and (v) use of reprinted articles from prestigious medical journals that falsely claimed Bextra and Celebrex were proven to be safer than other NSAIDs.

### The Ends Achieved By Defendants' Misconduct

37.     As a result of Defendants' scheme, they were able to create a market for Bextra and Celebrex to sell them at a premium price over other NSAIDs and to have it become a standard treatment option in many circumstances as opposed to use of less expensive NSAIDs. Bextra and Celebrex sales were unprecedented in the NSAIDs market.

38.     The success of Defendants' scheme was recently documented in a study released on January 24, 2005, in the ARCHIVES OF INTERNAL MEDICINE; Volume 165, entitled *National Trends in Cyclooxygenase-2 Inhibitor Use Since Market Release*. The authors of that study concluded that the "aggressive marketing techniques to patients and physicians" caused a growth not only in use of COX-2 inhibitors, but also in overall market demand, resulting in the use of such drugs for patients who did not need them.

39.     In fact, Bextra and Celebrex have been promoted as superior pain relievers when for most patients they have no proven superiority over other NSAIDs. To date there are *no* clinical studies that demonstrate an advantage of Bextra and Celebrex over other NSAIDs that would offset concerns about serious skin risks *(e.g.,* toxic epidermal necrolysis, Stevens-Johnson Syndrome, erythema multiforme), such as studies showing a GI safety benefit compared to other products. In addition, Bextra has been documented to be associated with increased risk of serious adverse cardiovascular events to such an extent, that on April 7, 2005, the Federal Drug

9

Administration ("FDA") requested Pfizer to withdraw Bextra from the United States market and Pfizer has done so. At the FDA briefing called to explain its request that Pfizer withdraw Bextra from the market, the FDA's director of the Office of New Drugs said that Bextra "had no unique benefit and it had the unique risk: the skin reaction."

40.    Bextra and Celebrex sold during the Class Period for $2.53 to $6.45 per day depending upon the dose, while NSAIDs sold for as little as $0.21 to $0.31 per day. Billions of dollars have thus been wasted in which Plaintiffs and Class Members have paid a premium price for a drug (and the doctor visits necessary to obtain prescriptions for Bextra and Celebrex) that is not a premium or superior product over equally available, less expensive NSAIDs and other pain medications. If Defendants had not engaged in the wrongful marketing, advertising and promotion of Bextra and Celebrex, Plaintiffs and Class Members would have paid for other, equally effective and less expensive medications. Had the truth been told about its safety and efficacy, Bextra and Celebrex would have sold at a price similar to that of other NSAIDs and would not have become a standard in the treatment of arthritis, dysmenorrheal and other non-FDA approved forms of pain relief and/or Bextra and Celebrex would not have been marketed at all. The plain fact is that at no time did Bextra and Celebrex, as compared to other, equally effective and less expensive therapeutic regimens, have a proven advantage for patients either at no risk or at high risk for GI complications. Thus, for virtually every purchaser — and contrary to Defendants' widespread marketing program — Bextra and Celebrex were neither more effective nor safer than older, less expensive NSAIDs and thus not a superior product.

41.    In this action, Plaintiff and the putative class seek damages arising from the purchases of Bextra and Celebrex resulting from Defendants' illegal or fraudulent scheme and/or conduct.

## Class Action Allegations

42.     Pursuant to Rule 4:32-1, et seq., of the New Jersey Court Rules, Plaintiff seeks class certification, in that (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (d) the representative party will fairly and adequately protect the interests of the class.  The common questions of law or fact, among others, include:

      a.     Whether Defendants concealed material information from end-users, physicians, and Third-Party Payors, to the financial detriment of Third-Party Payors, regarding the safety and efficacy of Bextra and Celebrex.

      b.     Whether Defendants targeted specific end-users and physicians through DTC advertising and an extreme sampling campaign to induce individuals to purchase and consume Bextra and Celebrex over other NSAIDS and to induce Third-Party Payors to purchase, or authorize the purchase of Bextra and Celebrex.

      c.     Whether Defendants misrepresented the safety and efficacy of Bextra and Celebrex to the public and Third-Party Payors to the financial detriment of Third-Party Payors;

      d.     Whether, as a result of Defendants' misrepresentations and failure to disclose material information regarding the safety and efficacy of Bextra and Celebrex, Plaintiff and other Third-Party Payors were damaged and/or suffered ascertainable loss;

      e.     Whether, as a result of Defendants' misrepresentations and failure to disclose

11

material information regarding the safety and efficacy of Bextra and Celebrex, Defendants committed fraud;

f.  The appropriate scope, extent, and measure of damages and equitable relief that should be awarded;

g.  Whether Defendants' actions were sufficiently wrongful to entitle Plaintiff and the putative class to punitive damages; and/or

h.  Whether Defendants' actions were sufficiently wrongful to entitle Plaintiff and the putative class to attorneys' fees, prejudgment interest, and costs of suit.

43.  Plaintiff will fairly and adequately represent the interests of the members of the class. Plaintiff's interests are the same as, and not in conflict with, the other members of the proposed class. Plaintiff's counsel is experienced in handling class actions and complex litigation.

44.  Plaintiff requests that this Court certify the following Class pursuant to Rule 4:32-1(b)(1), (2) and/or (3) of the New Jersey Court Rules as appropriate:

All Third-party payors in the United States of America, who have paid any person or entity for the purchase of the prescription drugs Bextra and Celebrex since 1999. Third-party payors include any non-governmental entity that is (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy, or plan provides prescription drug coverage to natural persons, and is also (ii) at risk, pursuant to such contract, policy, or plan, to purchase or pay for all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy, or plan. Excluded from the Class are (1) employees of Defendants, including their officers or directors; (2) Plaintiff's counsel;

12

and (3) the Judge of the Court to which this case is assigned.

## COUNT I

### Fraudulent Misrepresentation and/or Suppression

45.　　Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

46.　　Defendants concealed from Plaintiff, the putative class, physicians and end-users, truthful and complete efficacy and safety information regarding Bextra and Celebrex, particularly comparative information between Bextra and Celebrex and traditional NSAIDs.

47.　　Defendants provided, disseminated, marketed, and otherwise distributed advertising and other information to end-users, physicians, and Third-Party Payors that omitted adequate warnings and suppressed material medical information regarding the use of Bextra and Celebrex.

48.　　Defendants affirmatively misrepresented the safety and efficacy of Bextra and Celebrex in their advertising, promotional, and safety materials and information disseminated to Plaintiff, end-users, physicians and Third-Party Payors.

49.　　Defendants promoted Bextra and Celebrex as a drug with a great safety and efficacy profile as compared to its NSAID competitors when the purported safety and efficacy benefits were unfounded.

50.　　The foregoing omissions, misrepresentations, and practices proximately caused Plaintiff and the putative class to suffer damages in that they authorized the purchase of Bextra and Celebrex without knowing the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive,

13

NSAIDs.

51.     Defendants intended, or consciously disregarded, that Plaintiff and the putative class would rely on their omissions, misrepresentations, and practices so that they would authorize the purchase of Bextra and Celebrex.

52.     Plaintiff and the putative class would not have authorized the purchase of Bextra and Celebrex on the terms they did, had they known the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

53.     The Defendants had superior knowledge and information regarding the truth about Bextra and Celebrex and Plaintiff and the putative class did not have access to this information.

54.     Defendants' unlawful conduct arose, was directed, and emanated from New Jersey to the detriment and injury of class members throughout the United States.

## COUNT II

### Violations of New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, et seq.)

55.     Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

56.     At all relevant times material hereto, Defendants conducted trade and commerce within the meaning of the New Jersey CFA.

57.     Plaintiff, the putative class members, and Defendants are "persons" within the meaning of N.J.S.A. 56:8-1.

58.     Section 56:8-2 of the New Jersey CFA provides that unconscionable and deceptive conduct in connection with the sale or marketing of a product is unlawful, *e.g.*:

14

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice..."

59.     Defendants' practices in connection with the marketing and sale of Bextra and Celebrex violate the New Jersey CFA for, *inter alia*, one or more of the following reasons:

a.     Defendants knowingly suppressed and concealed from Plaintiff, the putative class, medical community, and end-users truthful and complete efficacy and safety information regarding Bextra and Celebrex, particularly comparative information between Bextra and Celebrex and traditional NSAIDs;

b.     Defendants provided, disseminated, marketed, and otherwise distributed DTC advertising and other information to end-users, physicians and Third-Party Payors that omitted adequate warnings and suppressed material medical information regarding the use of Bextra and Celebrex;

c.     Defendants misrepresented the safety and efficacy of Bextra and Celebrex in their advertising, promotional, and safety materials and information disseminated to end-users, physicians, and Third-Party Payors; and/or

d.     Defendants engaged in unconscionable commercial practices in promoting Bextra and Celebrex as drugs with a great safety and efficacy profile as compared to their NSAID competitors when the purported safety and efficacy benefits were unfounded.

60.     Defendants' omissions, misrepresentations, and practices had the tendency,

15

capacity, and likelihood to deceive Plaintiff and the putative class.

61.    Defendants intended, or consciously disregarded, that Plaintiff and the putative class would rely on their omissions, misrepresentations and practices so that they would authorize the purchase of Bextra and Celebrex.

62.    The foregoing omissions, misrepresentations, and practices caused Plaintiff and the putative class to suffer ascertainable losses in that they authorized the purchase of Bextra and Celebrex without knowing the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

63.    Plaintiff and the putative class would not have authorized the purchase of Bextra and Celebrex on the terms they did, or purchased Bextra and Celebrex had they known the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

64.    Defendants' unlawful conduct arose, was directed, and emanated from New Jersey.

    **WHEREFORE**, Plaintiff prays:

a.    That this matter be certified as a class action with the Class defined as set forth above, that Plaintiff be appointed Class Representative, and its attorneys be appointed Class Counsel;

b.    That judgment be entered against Defendants in an undetermined amount for violation of the New Jersey CFA, including actual damages, treble damages and costs of suit, including attorneys' fees;

c.    That judgment be entered against Defendants in an undetermined amount upon the claim for fraudulent misrepresentation and suppression, including actual

damages, exemplary and/or punitive damages and costs of suit, including attorneys' fees;

d.    That judgment be entered against Defendants for appropriate equitable relief and costs of suit, including attorneys' fees; and

e.    For such other damages, equitable relief, or other relief that the Court may deem just and proper, including pre-and post-judgment interest.

Respectfully Submitted:

By:

Michael A. Ferrara, Jr., Esq.
THE FERRARA LAW FIRM, LLC
601 Longwood Avenue
Cherry Hill, NJ 08001
Telephone: 856.779.9500
Facsimile: 856.661.0369

Robert T. Dassow, Esq.
HOVDE DASSOW & DEETS, LLC
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: 317.818.3100
Facsimile: 317.818.3111

David Ewing, Esq.
EWING, MCMILLIN & WILLIS, PLLC
1100 Republic Building
429 West Muhammad Ali Boulevard
Louisville, Kentucky 40202
Telephone:502.585.5800
Facsimile: 502.585.5858

Gary F. Franke, Esq.
GARY F. FRANKE CO., LPA
120 East Fourth Street, Suite 1040
Cincinnati, OH 45202
Telephone: 513.564.9222
Facsimile: 513.564.9990

*Attorneys for Plaintiff*

17

## REQUEST FOR TRIAL BY JURY

Plaintiff, by counsel, respectfully requests that Plaintiff's cause of action be tried by

jury.

By: _____

Michael A. Ferrara, Jr., Esq.
Robert T. Dassow, Esq.
*Attorneys for Plaintiff*

The Ferrara Law Firm, LLC
601 Longwood Avenue
Cherry Hill, NJ 08001
Telephone: 856.779.9500
Facsimile: 856.661.0369

18

Michael A. Ferrara, Jr., Esquire
THE FERRARA LAW FIRM, L.L.C.
601 Longwood Avenue
Cherry Hill, NJ 08002-2864

Robert T. Dassow, Esquire
HOVDE DASSOW & DEETS, LLC
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290

C. David Ewing, Esquire
EWING, MCMILLIN & WILLIS, PLLC
1100 Republic Building
429 West Muhammad Ali Boulevard
Louisville, KY 40202

Gary F. Franke, Esquire
GARY F. FRANKE CO., PA
120 East Fourth Street, Suite 1040
Cincinnati, OH 45202

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST and, SOUTHWEST AREAS HEALTH and WELFARE FUND, Individually and on behalf of all others similarly situated | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: ATLANTIC COUNTY Docket No. ATL-L-1120-07 MT CIVIL ACTION |
| Plaintiffs, | Case Code Number: 272 |
| v. | BEXTRA/CELEBREX LITIGATION |
| PFIZER, INC. and PHARMACIA CORP., | **SUMMONS** |
| Defendant. | |

---

TO:   **Pharmacia Corporation
100 Route 206 North
Peapack, New Jersey 07977**

Case 3:07-cv-02369-HRL Document 1-2 Filed 05/04/2007 Page 30 of 55

**FROM THE STATE OF NEW JERSEY TO THE DEFENDANT NAMED ABOVE**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to the summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the County listed above within thirty five (35) days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, PO Box 971 (CN-971), Trenton, NJ 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from your deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 [$135.00 for Law Division and $135.00 for Chancery Division] and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief that plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer's Referral Services. A list of these numbers is also provided.

DATE: April 10, 2007

*Theodore Fetter*

Theodore Fetter
Clerk of the Superior Court

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharch Blvd., First Fl.
Atlantic City, NJ 08101
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201)488-0044
LEGAL SERVICES
(201)487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn.: Judicial Intake
First Floor, Courts Facility
49 Rancocas Road
Mount Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Floor, Hall of Records
101 S. Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil case Management Office
Broad & Fayette Streets, PO Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn.: Intake
First Fl., Court House
1 North Broad Street, PO Box 129
Woodbury, New Jersey 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House-1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Court House
175 South Broad Street, PO Box 8068
Trenton, New Jersey 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Square, PO Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., PO Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 07960-0910
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
91 Market Street, PO Box 18
Salem, New Jersey 08079
LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Floor
PO Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07960
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 231-0840

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

ATLANTIC COUNTY COURT HOUSE
SUPERIOR COURT LAW DIV
1201 BACHARACH BLVD
ATLANTIC CITY      NJ 08401

COURT TELEPHONE NO. (609) 345-6700
COURT HOURS

                                    TRACK ASSIGNMENT NOTICE

                    DATE:      APRIL 05, 2007
                    RE:        CENTRAL STATES ET ALS VS PFIZER INC ET AL
                    DOCKET:    ATL L -001120 07

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:   HON CAROL E. HIGBEE

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     004
AT:
    (609) 345-6700.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

                              ATTENTION:

                              ATT: MICHAEL A. FERRARA, JR
                                   FERRARA LAW FIRM
                                   MICHAEL A FERRARA
                                   601 LONGWOOD AVE STATE HWY 38
                                   CHERRY HILL      NJ 08002-2864

JUMELS

APR 1 0 2007

# STATEWIDE ADJOURNMENT PROCEDURE FOR CIVIL TRIALS AND ARBITRATIONS
## [AS APPROVED BY THE SUPREME COURT AND PROMULGATED BY DIRECTIVE #6-04]

1. All requests to adjourn a civil trial or an arbitration are governed by *Rule* 4:36-3(b).

2. A good faith effort shall be made to discuss any request for an adjournment with all other parties before the request is presented to the court.

3. All adjournment requests must be made in writing, submitted to the Civil Division Manager. Faxed submissions are acceptable. Telephone requests will not be accepted absent exceptional circumstances. Requests must be copied to all other parties.

4. Any request for an adjournment must be presented as soon as the need for an adjournment is known. Absent exceptional circumstances, the request must be presented no later than the close of business on the Wednesday preceding the Monday of the week the matter is scheduled for trial or arbitration.

5. The written request must indicate the reason or reasons the adjournment has been requested, and whether the other parties have consented to the proposed adjournment. The written request should also include a new proposed date for trial or arbitration, consented to by all parties. If consent cannot be obtained, the court will determine the matter by conference call with all parties.

6. If the adjournment request is based upon a conflict with another court proceeding, the party requesting the adjournment must indicate whether he or she is designated trial counsel and supply the name of the other matter, the court and county in which it is pending, and the docket number assigned to the matter.

7. No adjournments will be granted to accommodate dispositive motions returnable on or after the scheduled trial date.

8. A matter should not be considered adjourned until court staff has confirmed that the request for an adjournment has been granted. Timely response will be given to the party requesting the adjournment, who will then be responsible for communicating the decision to all other parties.

9. To the extent any party is dissatisfied with the decision made by the Civil Case Management Office, the following procedure should be followed:

In master calendar counties, the aggrieved party should present the matter to the Civil Division Manager directly; to the extent that any party is dissatisfied with the decision made by the Civil Division Manager, that party may ask that the matter be presented to the Civil Presiding Judge;

In individual/team calendar counties, the aggrieved party should present the matter to the Civil Division Manager directly; to the extent that any party is dissatisfied with the decision made by the Civil Division Manager, that party

10. Requests for adjournment of a civil trial based on expert unavailability are governed by *R.* 4:36-3(c).

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE:   CK   CG   CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| Michael A. Ferrara, Jr. | ( 856 ) 779-9500 | Atlantic County |

**FIRM NAME (If applicable)**
The Ferrara Law Firm

**DOCKET NUMBER (When available)**
ATL-L-1120-07MT

**OFFICE ADDRESS**
601 Longwood Avenue
Cherry Hill, NJ 08002

**DOCUMENT TYPE**
Complaint

**JURY DEMAND** ☑ YES ☐ NO

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
| --- | --- |
| Central States, Southeast and Southwest Areas Health and Welfare Fund, Individually and on behalf of all others similarly situated, Plaintiffs | Central States, Southeast and Southwest Areas Health and Welfare Fund, Individually and on behalf of all others similarly situated, Plaintiff vs. Pfizer, Inc., and Pharmacia Corp., Defendants |

**CASE TYPE NUMBER**
(See reverse side for listing) 272

**IS THIS A PROFESSIONAL MALPRACTICE CASE?** ☐ YES ☑ NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?** ☑ YES ☐ NO

**IF YES, LIST DOCKET NUMBERS** All Bextra/Celebrex cases pending before Judge Higbee.

**DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?** ☐ YES ☑ NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN**
☐ NONE ☑ UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?** ☐ YES ☑ NO

**IF YES, IS THAT RELATIONSHIP** ☐ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) _____
☐ FAMILIAL ☐ BUSINESS

**B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?** ☑ YES ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

This is a third party payor class action complaint.

**RECEIVED and FILED**

**APR 05 2007**

**ATLANTIC COUNTY LAW DIVISION**

**DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?** ☐ YES ☑ NO
IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____

**WILL AN INTERPRETER BE NEEDED?** ☐ YES ☑ NO
IF YES, FOR WHAT LANGUAGE: _____

**ATTORNEY SIGNATURE**

Revised effective 3/1/04

| SIDE 2 |  | **CIVIL CASE INFORMATION STATEMENT**<br>(CIS)<br>Use for initial pleadings (not motions) under *Rule 4:5-1* |
|---|---|---|

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY |
| 502 | BOOK ACCOUNT |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |

**Track II — 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT – OTHER |

**Track III — 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 613 | REPETITIVE STRESS SYNDROME |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRIT |

**Mass Tort (Track IV)**
| | | | | |
|---|---|---|---|---|
| 240 | DIET DRUG | | 264 | PPA |
| 246 | REZULIN | | 601 | ASBESTOS |
| 247 | PROPULSID | | 619 | VIOXX |
| 248 | CIBA GEIGY | | | |

999 OTHER (Briefly describe nature of action) ___272- Bextra/Celebrex Third Party Payor Class Action___

_____

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:

☐ Verbal Threshold      ☐ Putative Class Action      ☐ Title 59

Revised Effective 3/1/04

RECEIVED and
FILED

APR 05 2007

ATLANTIC COUNTY
LAW DIVISION

Michael A. Ferrara, Jr., Esq.
THE FERRARA LAW FIRM, LLC
601 Longwood Avenue
Cherry Hill, NJ 08001
Telephone: 856.779.9500
Facsimile: 856.661.0369

Robert T. Dassow, Esq.
HOVDE DASSOW & DEETS, LLC
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: 317.818.3100
Facsimile: 317.818.3111

C. David Ewing, Esq.
EWING, McMILLIN & WILLIS, PLLC
1100 Republic Building
429 West Muhammad Ali Boulevard
Louisville, Kentucky 40202
Telephone:502.585.5800
Facsimile: 502.585.5858

Gary F. Franke, Esq.
GARY F. FRANKE CO., LPA
120 East Fourth Street, Suite 1040
Cincinnati, OH 45202
Telephone: 513.564.9222
Facsimile: 513.564.9990

*Attorneys for Plaintiff*

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST and SOUTHWEST AREAS HEALTH AND WELFARE FUND, Individually and on behalf of all others similarly situated | ) ) ) ) SUPERIOR COURT OF NEW JERSEY LAW DIVISION- ATLANTIC COUNTY |
| Plaintiff | ) ) MT: ATL-L-1120-07MT ) Case Code Number: 272 |
| V. | ) ) BEXTRA/CELEBREX LITIGATION |
| PFIZER, INC. and PHARMACIA CORP., | ) ) **CLASS ACTION** |
| Defendants | ) **COMPLAINT AND JURY DEMAND** ) |

## CLASS ACTION COMPLAINT

Plaintiff, Central States, Southeast and Southwest Areas Health and Welfare Fund, individually and on behalf of all others similarly situated, by its attorneys, for its causes of action against Defendants, referenced herein, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Plaintiff" or "the Fund") is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5), and is an employee benefit plan established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq.*, for the purpose of providing health benefits, including prescription drug coverage, to eligible participants and beneficiaries. The Fund maintains its principal place of business at 9377 W. Higgins Road, Rosemont, Illinois 60018 and provides comprehensive health coverage for approximately 360,000 participants and beneficiaries in all or nearly all fifty (50) states.

2. Defendant Pfizer, Inc. is a Delaware corporation with its address and principal place of business at 235 East 42nd Street, New York, New York 10017, and is authorized to do business and does do business in the State of New Jersey. At all times relevant hereto, Pfizer, Inc. was in the business of developing, manufacturing, promoting, marketing and distributing pharmaceuticals and other products, including the products known as Bextra and Celebrex.

3. Defendant Pharmacia Corporation is a Delaware corporation with its address and principal place of business at 100 Route 206 North, Peapack, New Jersey, 07977, and is authorized to do business and does do business in the State of New Jersey. At all times relevant

2

hereto, Pharmacia Corporation was in the business of promoting, manufacturing, marketing, and distributing Bextra and Celebrex.

## SUBSTANTIVE ALLEGATIONS

4.    This Complaint arises from Defendants' marketing, advertising, promotion, and sale of the prescription drugs Bextra and Celebrex, anti-inflammatory drugs and pain relievers. Plaintiff alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("New Jersey CFA"), and fraudulent misrepresentation and suppression of material information in connection with the marketing and sale of Bextra and Celebrex.

5.    Defendants misrepresented and concealed material safety information from end-users, physicians, and Third-Party Payors concerning the cardiovascular and gastrointestinal risks associated with Bextra and Celebrex.    Additionally, Defendants made false and intentionally misleading representations, and omitted material facts, regarding the comparative safety and efficacy of Bextra and Celebrex as compared to traditional non-steroidal anti-inflammatory drugs (NSAIDS).

6.    The purpose of Defendants' misrepresentations and omissions, in combination with Defendants' aggressive marketing and promotion schemes, was to (i) create, and thereafter increase, end-user and physician demand for Bextra and Celebrex in an already crowded NSAID market, (ii) induce the Fund and the putative class to authorize the purchase of Bextra and Celebrex by their plan participants and beneficiaries, and (iii) justify the enormous price disparity between Bextra and Celebrex and traditional NSAIDs.

7.    As a result of Defendants' fraudulent and unconscionable commercial practices in connection with the marketing and sale of Bextra and Celebrex, Defendants induced the Fund and the putative class to authorize the purchase of Bextra and Celebrex.  Defendants intended

3

that the Fund and the class would rely on their marketing, advertisements, promotional efforts, and misrepresentations to their detriment. They did.

8.     As a consequence, Plaintiff and the class paid vastly more than they should and otherwise would have for Bextra and Celebrex.

9.     Plaintiff and the class seek actual damages, treble damages, punitive damages, attorneys' fees, and costs for full or practical purchase costs for Bextra and Celebrex prescriptions dispensed to natural persons covered by the Fund and the putative class members.

10.     NSAIDs have been widely used to treat arthritis, acute and chronic pain for nearly 40 years. Although they relieve symptoms in certain patients, such relief comes at the expense of important adverse effects, most notably upper gastrointestinal toxicity. Use of NSAIDs lead to hospital admissions for ulcer complications (bleeding and perforation) in around 1% of users annually and results in thousands of deaths every year.

11.     The emergence of NSAIDs that selectively inhibit the cyclo-oxygenase 2 ("COX-2") isoform, which is inducible and expressed at sites of inflammation, while sparing COX-1, associated with gastroprotection, was an apparent pharmacological breakthrough promising real hope of a better future for NSAIDs.

12.     Bextra and Celebrex, both manufactured by Defendants, were two of the new COX-2 inhibitors. Defendants believed that Bextra and Celebrex had the potential to be a new blockbuster drug with yearly sales in the billions of dollars.

13.     Defendants represented that Bextra and Celebrex provided symptomatic relief similar to ibuprofen and naproxen but that they were clinically superior because they were significantly less likely to cause the gastrointestinal adverse side effects associated with these and other NSAIDs. For instance, NSAIDs can, in certain patients, cause gastrointestinal

4

perforations, ulcers and bleeding with long-term use. Defendants promoted Bextra and Celebrex as a safe and effective alternative that would have less deleterious and painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

### Celebrex

14.     Celebrex is the brand name of celecoxib and is among the class of NSAIDs that allegedly produce anti-inflammatory and analgesic effects to the benefit of people with rheumatoid arthritis or osteoarthritis.

15.     The federal Food and Drug Administration (hereinafter "FDA") approved Celebrex for use in the United States on December 31, 1998 for the treatment of arthritis and pain at recommended doses of 100 mg to 200 mg a day for osteoarthritis and 200 mg to 400 mg a day for rheumatoid arthritis.

16.     Once Defendants received approval of the drug for the treatment of arthritis and until approximately December 17, 2004, they aggressively promoted the drug to millions of physicians, healthcare providers and to the general public as an NSAID that had minimal risks.

17.     Not only did Defendants aggressively promote Celebrex, but in October 2004, Defendants restated their representations that no completed study had ever shown any increased heart risks related to Celebrex; however, there were at least three studies by that time that had linked Celebrex to serious and debilitating side effects, including cardiovascular and gastrointestinal risks.

18.     In a study done in 1999 to determine whether Celebrex was effective in treating Alzheimer's disease, patients took 400 milligrams of Celebrex daily.  Defendants knew this study revealed that 22 out of 285 patients taking Celebrex suffered heart attacks, strokes and other cardiovascular events, while only 3 of 140 patients taking a placebo had similar problems.

5

19. Notwithstanding its significant cardiovascular findings, Defendants did not publish the 1999 Alzheimer's study or submit this study to the FDA until after the FDA conducted a review of Celebrex.

20. Defendants were also aware of the Celecoxib Long-term Arthritis Safety Study (hereinafter "CLASS") which was a double-blind, randomized safety trial that evaluated approximately 4,000 patients with osteoarthritis and rheumatoid arthritis treated with 400 milligrams of Celebrex twice a day, compared to approximately 4,000 patients treated with standard doses of ibuprofen or other NSAIDs.

21. CLASS established that people who took Celebrex did not have significantly lower gastrointestinal complications than patients who took ibuprofen or other NSAIDs.

22. Despite their knowledge of these results, Defendants nevertheless marketed Celebrex as not causing gastrointestinal problems.

23. Despite Defendants marketing Celebrex as an NSAID that did not cause gastrointestinal problems, the FDA and its Advisory Committee concluded that the drug labeling for Celebrex should include the standard warning for doctors and their patients about risks associated with all NSAIDs, including risks of gastrointestinal ulceration, bleeding, and perforation.

24. Defendants further knew that the National Institutes of Health had halted the "Adenoma Prevention with Celebrex" (hereinafter "APC") trial when it was found that Celebrex patients were up to four times more likely to suffer key cardiovascular events compared to patients who received a placebo.

25. The APC trial was intended to determine if Celebrex could assist in the prevention of colon cancer. The trial included more than 2,000 people who had a precancerous

growth removed. Participants were selected at random to take either 200 mg of Celebrex twice a day, 400 mg of Celebrex twice a day, or a placebo three times a day.

26.     The APC trial was halted because analysis by an independent Data Safety and Monitoring Board showed a 2.5-fold increased risk of major fatal and non-fatal cardiovascular events for participants taking the drug compared to those taking a placebo.

27.     Upon learning of the results of these studies, the FDA asked Defendants to voluntarily suspend direct-to-consumer advertising for Celebrex during the time it was obtaining and evaluating scientific data on the adverse effects of the drug.

### Bextra

28.     Like Celebrex, Bextra was manufactured by Defendants.

29.     Defendants failed to perform adequate testing that would have shown Bextra caused serious side effects. Defendants also failed to provide warnings that would accurately reflect the serious side effects caused by Bextra.

30.     Prior to the manufacturing, sale and distribution of Bextra, Defendants had notice and knowledge from several sources that Bextra presented substantial and unreasonable risks of harm to consumers.

31.     Despite knowledge of the serious risks Bextra posed to consumers, Defendants intentionally proceeded with the manufacturing, sale and marketing of Bextra. Defendants' conduct was therefore wanton and willful, and displayed a conscious disregard for the safety of consumers.

### Defendants' Mis-Marketing Scheme
### And Activities Directed To Third-Party Payors

32.     As part of the unlawful scheme set forth below, Defendants promoted the use of

Bextra and Celebrex to Third-Party Payors as a "breakthrough" drug providing important clinical advantages over older and far less expensive NSAIDs.

33. The extent to which a drug is paid for by Third-Party Payors is determined by that drugs' status on the Third-Party Payor's "formulary," which is a list of drugs that plan participants are authorized to purchase for payment under the benefit plan.

34. Placement of a prescription drug on the formularies of Third-Party Payors is critical to the success of the drug. Defendants knew that preferred placement on these formularies would guarantee commercial success for Bextra and Celebrex.

35. In an elaborate and sophisticated manner, Defendants aggressively marketed Bextra and Celebrex directly to medical professionals (including physicians, dentists, and leading medical scholars) in order to leverage pressure on Third-Party Payors, medical care organizations, and large institutional buyers (e.g., hospitals) to include Bextra and Celebrex on their formularies. Bextra and Celebrex's marketing campaign specifically targeted Third-Party Payors, physicians and dentists, and was designed to convince them of both the therapeutic and economic value of Bextra and Celebrex. Faced with the increased demand for the drug by health care professionals that resulted from Bextra and Celebrex's successful advertising and marketing blitz, Third-Party Payors were compelled to add Bextra and Celebrex to their formularies.

36. Defendants' marketing and promotion of Bextra and Celebrex was part of a scheme to create the impression of, and demand for, Bextra and Celebrex as a wide-ranging pain reliever, particularly for the treatment of arthritis pain and/or pain in general (a use for which it was not FDA approved). The scheme was accomplished by unlawful means including, but not limited to, (i) suppression of data showing cardiovascular risks associated with the use of Bextra and Celebrex, (ii) suppression of data showing risks of serious and potentially life-threatening

8

skin reactions, (iii) manipulation of data to give the appearance of superiority over other NSAIDs in pain relief, efficacy, and GI safety when such superiority did not exist, (iv) false promotional materials directed to doctors and consumers, and (v) use of reprinted articles from prestigious medical journals that falsely claimed Bextra and Celebrex were proven to be safer than other NSAIDs.

### The Ends Achieved By Defendants' Misconduct

37.     As a result of Defendants' scheme, they were able to create a market for Bextra and Celebrex to sell them at a premium price over other NSAIDs and to have it become a standard treatment option in many circumstances as opposed to use of less expensive NSAIDs. Bextra and Celebrex sales were unprecedented in the NSAIDs market.

38.     The success of Defendants' scheme was recently documented in a study released on January 24, 2005, in the ARCHIVES OF INTERNAL MEDICINE; Volume 165, entitled *National Trends in Cyclooxygenase-2 Inhibitor Use Since Market Release*. The authors of that study concluded that the "aggressive marketing techniques to patients and physicians" caused a growth not only in use of COX-2 inhibitors, but also in overall market demand, resulting in the use of such drugs for patients who did not need them.

39.     In fact, Bextra and Celebrex have been promoted as superior pain relievers when for most patients they have no proven superiority over other NSAIDs. To date there are *no* clinical studies that demonstrate an advantage of Bextra and Celebrex over other NSAIDs that would offset concerns about serious skin risks *(e.g.,* toxic epidermal necrolysis, Stevens-Johnson Syndrome, erythema multiforme), such as studies showing a GI safety benefit compared to other products. In addition, Bextra has been documented to be associated with increased risk of serious adverse cardiovascular events to such an extent, that on April 7, 2005, the Federal Drug

Administration ('FDA") requested Pfizer to withdraw Bextra from the United States market and Pfizer has done so. At the FDA briefing called to explain its request that Pfizer withdraw Bextra from the market, the FDA's director of the Office of New Drugs said that Bextra "had no unique benefit and it had the unique risk: the skin reaction."

40.    Bextra and Celebrex sold during the Class Period for $2.53 to $6.45 per day depending upon the  dose, while NSAIDs sold for as little as $0.21 to $0.31 per day. Billions of dollars have thus been wasted in which Plaintiffs and Class Members have paid a premium price for a drug (and the doctor visits necessary to obtain prescriptions for Bextra and Celebrex) that is not a premium or superior product over equally available, less expensive NSAIDs and other pain medications. If Defendants had not engaged in the wrongful marketing, advertising and promotion of Bextra and Celebrex, Plaintiffs and Class Members would have paid for other, equally effective and less expensive medications. Had the truth been told about its safety and efficacy, Bextra and Celebrex would have sold at a price similar to that of other NSAIDs and would not have become a standard in the treatment of arthritis, dysmenorrheal and other non-FDA approved forms of pain relief and/or Bextra and Celebrex would not have been marketed at all. The plain fact is that at no time did Bextra and Celebrex, as compared to other, equally effective and less expensive therapeutic regimens, have a proven advantage for patients either at no risk or at high risk for GI complications. Thus, for virtually every purchaser — and contrary to Defendants' widespread marketing program — Bextra and Celebrex were neither more effective nor safer than older, less expensive NSAIDs and thus not a superior product.

41.    In this action, Plaintiff and the putative class seek damages arising from the purchases of Bextra and Celebrex resulting from Defendants' illegal or fraudulent scheme and/or conduct.

## Class Action Allegations

42.     Pursuant to Rule 4:32-1, et seq., of the New Jersey Court Rules, Plaintiff seeks class certification, in that (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (d) the representative party will fairly and adequately protect the interests of the class.  The common questions of law or fact, among others, include:

a.     Whether Defendants concealed material information from end-users, physicians, and Third-Party Payors, to the financial detriment of Third-Party Payors, regarding the safety and efficacy of Bextra and Celebrex.

b.     Whether Defendants targeted specific end-users and physicians through DTC advertising and an extreme sampling campaign to induce individuals to purchase and consume Bextra and Celebrex over other NSAIDS and to induce Third-Party Payors to purchase, or authorize the purchase of Bextra and Celebrex.

c.     Whether Defendants misrepresented the safety and efficacy of Bextra and Celebrex to the public and Third-Party Payors to the financial detriment of Third-Party Payors;

d.     Whether, as a result of Defendants' misrepresentations and failure to disclose material information regarding the safety and efficacy of Bextra and Celebrex, Plaintiff and other Third-Party Payors were damaged and/or suffered ascertainable loss;

e.     Whether, as a result of Defendants' misrepresentations and failure to disclose

11

material information regarding the safety and efficacy of Bextra and Celebrex, Defendants committed fraud;

f.    The appropriate scope, extent, and measure of damages and equitable relief that should be awarded;

g.    Whether Defendants' actions were sufficiently wrongful to entitle Plaintiff and the putative class to punitive damages; and/or

h.    Whether Defendants' actions were sufficiently wrongful to entitle Plaintiff and the putative class to attorneys' fees, prejudgment interest, and costs of suit.

43.    Plaintiff will fairly and adequately represent the interests of the members of the class. Plaintiff's interests are the same as, and not in conflict with, the other members of the proposed class. Plaintiff's counsel is experienced in handling class actions and complex litigation.

44.    Plaintiff requests that this Court certify the following Class pursuant to Rule 4:32-1(b)(1), (2) and/or (3) of the New Jersey Court Rules as appropriate:

All Third-party payors in the United States of America, who have paid any person or entity for the purchase of the prescription drugs Bextra and Celebrex since 1999. Third-party payors include any non-governmental entity that is (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy, or plan provides prescription drug coverage to natural persons, and is also (ii) at risk, pursuant to such contract, policy, or plan, to purchase or pay for all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy, or plan. Excluded from the Class are (1) employees of Defendants, including their officers or directors; (2) Plaintiff's counsel;

12

and (3) the Judge of the Court to which this case is assigned.

## COUNT I

### Fraudulent Misrepresentation and/or Suppression

45.     Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

46.     Defendants concealed from Plaintiff, the putative class, physicians and end-users, truthful and complete efficacy and safety information regarding Bextra and Celebrex, particularly comparative information between Bextra and Celebrex and traditional NSAIDs.

47.     Defendants provided, disseminated, marketed, and otherwise distributed advertising and other information to end-users, physicians, and Third-Party Payors that omitted adequate warnings and suppressed material medical information regarding the use of Bextra and Celebrex.

48.     Defendants affirmatively misrepresented the safety and efficacy of Bextra and Celebrex in their advertising, promotional, and safety materials and information disseminated to Plaintiff, end-users, physicians and Third-Party Payors.

49.     Defendants promoted Bextra and Celebrex as a drug with a great safety and efficacy profile as compared to its NSAID competitors when the purported safety and efficacy benefits were unfounded.

50.     The foregoing omissions, misrepresentations, and practices proximately caused Plaintiff and the putative class to suffer damages in that they authorized the purchase of Bextra and Celebrex without knowing the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive,

13

NSAIDs.

51.     Defendants intended, or consciously disregarded, that Plaintiff and the putative class would rely on their omissions, misrepresentations, and practices so that they would authorize the purchase of Bextra and Celebrex.

52.     Plaintiff and the putative class would not have authorized the purchase of Bextra and Celebrex on the terms they did, had they known the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

53.     The Defendants had superior knowledge and information regarding the truth about Bextra and Celebrex and Plaintiff and the putative class did not have access to this information.

54.     Defendants' unlawful conduct arose, was directed, and emanated from New Jersey to the detriment and injury of class members throughout the United States.

## COUNT II

### Violations of New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, et seq.)

55.     Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

56.     At all relevant times material hereto, Defendants conducted trade and commerce within the meaning of the New Jersey CFA.

57.     Plaintiff, the putative class members, and Defendants are "persons" within the meaning of N.J.S.A. 56:8-1.

58.     Section 56:8-2 of the New Jersey CFA provides that unconscionable and deceptive conduct in connection with the sale or marketing of a product is unlawful, *e.g.*:

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice..."

59.     Defendants' practices in connection with the marketing and sale of Bextra and Celebrex violate the New Jersey CFA for, *inter alia*, one or more of the following reasons:

a.      Defendants knowingly suppressed and concealed from Plaintiff, the putative class, medical community, and end-users truthful and complete efficacy and safety information regarding Bextra and Celebrex, particularly comparative information between Bextra and Celebrex and traditional NSAIDs;

b.      Defendants provided, disseminated, marketed, and otherwise distributed DTC advertising and other information to end-users, physicians and Third-Party Payors that omitted adequate warnings and suppressed material medical information regarding the use of Bextra and Celebrex;

c.      Defendants misrepresented the safety and efficacy of Bextra and Celebrex in their advertising, promotional, and safety materials and information disseminated to end-users, physicians, and Third-Party Payors; and/or

d.      Defendants engaged in unconscionable commercial practices in promoting Bextra and Celebrex as drugs with a great safety and efficacy profile as compared to their NSAID competitors when the purported safety and efficacy benefits were unfounded.

60.     Defendants' omissions, misrepresentations, and practices had the tendency,

15

capacity, and likelihood to deceive Plaintiff and the putative class.

61.    Defendants intended, or consciously disregarded, that Plaintiff and the putative class would rely on their omissions, misrepresentations and practices so that they would authorize the purchase of Bextra and Celebrex.

62.    The foregoing omissions, misrepresentations, and practices caused Plaintiff and the putative class to suffer ascertainable losses in that they authorized the purchase of Bextra and Celebrex without knowing the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

63.    Plaintiff and the putative class would not have authorized the purchase of Bextra and Celebrex on the terms they did, or purchased Bextra and Celebrex had they known the true and complete risks and benefits of Bextra and Celebrex, in general, and specifically in comparison to alternative, and significantly less expensive, NSAIDs.

64.    Defendants' unlawful conduct arose, was directed, and emanated from New Jersey.

WHEREFORE, Plaintiff prays:

a.    That this matter be certified as a class action with the Class defined as set forth above, that Plaintiff be appointed Class Representative, and its attorneys be appointed Class Counsel;

b.    That judgment be entered against Defendants in an undetermined amount for violation of the New Jersey CFA, including actual damages, treble damages and costs of suit, including attorneys' fees;

c.    That judgment be entered against Defendants in an undetermined amount upon the claim for fraudulent misrepresentation and suppression, including actual

16

damages, exemplary and/or punitive damages and costs of suit, including attorneys' fees;

d. That judgment be entered against Defendants for appropriate equitable relief and costs of suit, including attorneys' fees; and

e. For such other damages, equitable relief, or other relief that the Court may deem just and proper, including pre-and post-judgment interest.

Respectfully Submitted:

By: _____

Michael A. Ferrara, Jr., Esq.
THE FERRARA LAW FIRM, LLC
601 Longwood Avenue
Cherry Hill, NJ 08001
Telephone: 856.779.9500
Facsimile: 856.661.0369

Robert T. Dassow, Esq.
HOVDE DASSOW & DEETS, LLC
10585 N. Meridian Street, Suite 205
Indianapolis, IN 46290
Telephone: 317.818.3100
Facsimile: 317.818.3111

David Ewing, Esq.
EWING, McMILLIN & WILLIS, PLLC
1100 Republic Building
429 West Muhammad Ali Boulevard
Louisville, Kentucky 40202
Telephone:502.585.5800
Facsimile: 502.585.5858

Gary F. Franke, Esq.
GARY F. FRANKE CO., LPA
120 East Fourth Street, Suite 1040
Cincinnati, OH 45202
Telephone: 513.564.9222
Facsimile: 513.564.9990

*Attorneys for Plaintiff*

17

## REQUEST FOR TRIAL BY JURY

Plaintiff, by counsel, respectfully requests that Plaintiff's cause of action be tried by jury.

By: _____

Michael A. Ferrara, Jr., Esq.
Robert T. Dassow, Esq.
*Attorneys for Plaintiff*

The Ferrara Law Firm, LLC
601 Longwood Avenue
Cherry Hill, NJ 08001
Telephone: 856.779.9500
Facsimile: 856.661.0369